John CADARIAN, et al., Plaintiffs,

v.

MERRELL DOW PHARMACEUTICALS, INC., et al., Defendants.

No. 82–73236.

United States District Court,
E.D. Michigan, S.D.

Oct. 25, 1989.

**410**

Thomas Bleckley, Detroit, Mich., for plaintiff.

Frank Woodside, Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on a motion for summary judgment filed by defendant Merrell Dow Pharmaceuticals, Inc. (Merrell Dow). Plaintiff has filed an opposing memorandum to which defendant has replied. In accordance with Fed.R. Civ.P. 52, the Court does hereby set forth its findings of fact and conclusions of law.

## FINDINGS OF FACT

(1) Staci Cadarian (hereinafter "Staci") was born on November 25, 1972 with spina bifida with meningomyelocele and hydrocephalus. She was diagnosed subsequent to birth as having severe mental retardation, inability to walk, impaired motor function, and inability to talk.

(2) Staci's mother, Barbara Ann Cadarian, had her last menstrual period preceding Staci's birth in either mid-January 1972 or on February 13, 1972.

(3) Barbara Ann Cadarian was initially prescribed Bendectin during her pregnancy with Staci at the end of April or beginning of May, 1972.

(4) According to plaintiffs, Barbara Ann Cadarian ingested oral contraceptives early in her pregnancy with Staci.

(5) Any substance or event that could cause a failure of the neural tube to close, and the spinal cord to protrude, resulting in spina bifida with meningomyelocele must have been ingested or must have occurred before day 24 after conception.

(6) Birth defects do not necessarily result from a single event occurring during the sensitive period of development.

## SUMMARY JUDGMENT

■ The summary judgment·procedure under Federal Rule of Civil Procedure 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting, First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11 (*citing Cities Service,* 391 U.S. at 288–289, 88 S.Ct. at 1592–93). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) or is not significantly probative, *Cities Service,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## OPINION

■ Defendant contends that it is entitled to summary judgment on the ground that Barbara Ann Cadarian first ingested Bendectin after the critical period of devel-

opment for the spinal cord. Therefore, defendant claims, Bendectin could not have been a proximate cause of Staci's birth defects.

In support of its motion, defendant has submitted an affidavit of Keith L. Moore, B.A., M.Sc., Ph.D., F.I.A.C. Dr. Moore is an expert in the fields of prenatal developmental anatomy, embryology and teratology. Dr. Moore is the author of *The Timetable of Human Prenatal Development*, which identifies 23 stages of embryonic development during the first eight weeks of gestational age.

In his affidavit, Dr. Moore assumes that Barbara Ann Cadarian's last menstrual period was February 13, 1972. Based on a regular 28–day menstrual cycle, Dr. Moore estimates the date of Staci's conception to be February 27, 1972. Accepting May 8, 1972 as the first date of Bendectin ingestion, Dr. Moore calculates that Barbara Ann Cadarian first ingested Bendectin 71 days after conception.

Dr. Moore opines that Staci's birth defects resulted from an abnormality in the closure of the neural tube. He states that closure of the entire neural tube occurs by the end of the fourth week following conception. Consequently, any substance or event that could cause the type of birth defects Staci has must have been ingested or must have occurred before Day 24 after conception in order to cause the neural tube not to close. Dr. Moore notes that Barbara Ann Cadarian did not ingest Bendectin until 47 days after the critical period for development of the spinal cord. Thus, he concludes that the abnormal developmental processes resulting in Staci's birth defects were already occurring when Barbara Ann Cadarian ingested Bendectin for the first time.

In response to defendant's motion, plaintiffs have submitted an affidavit of John D. Palmer, Ph.D., M.D. Dr. Palmer is a specialist in the field of pharmacology. Dr. Palmer concurs with Dr. Moore as to the estimated date of conception, the date of first Bendectin ingestion, and the critical period for development of the neural tube. Dr. Palmer states that Staci suffers from severe neurological damage that exceeds what is normally seen in a child with her condition. Dr. Palmer opines that Barbara Ann Cadarian's early ingestion of an unidentified oral contraceptive caused underlying defects to be present in Staci and that the subsequent ingestion of Bendectin significantly contributed to Staci's profound neurological damage.

As support for his opinion, Dr. Palmer relies on: (1) the fact that Barbara Ann Cadarian ingested Bendectin during a period of fetal development when the neurotoxicity of Bendectin resulted in functional disturbances of Staci's brain and spinal cord; (2) his education, training and experience in pharmacology; (3) the "Heinonen study", which allegedly demonstrates a 720% increase in central nervous system defects with doxylamine; (4) unspecified animal studies, in vitro tests, and case reports; and (5) his basic understanding of the chemical properties of doxylamine and antihistamines on nervous tissue.

Defendant contends that the evidence on which Dr. Palmer relies is not such that is reasonably relied upon by experts in his field and therefore does not fall within the ambit of Fed.R.Evid. 703. Defendant specifically disputes that the Heinonen study demonstrates a 720% increase in central nervous system defects. Defendant notes that the 720% figure appears in Appendix 4 of the study wherein the study's authors state that positive associations found "are uninterpretable without independent confirmatory evidence"; that estimates of "statistical significance are improper and are not presented"; and that data contained in the appendix cannot be used to infer that a particular drug causes a particular malformation without independent confirmation.

Fed.R.Evid. 703 provides that:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

 Summary judgment is not precluded simply because a party has produc-

ed an expert to support its position. *Richardson by Richardson v. Richardson—Merrill, Inc.*, 857 F.2d 823, 829 (D.C.Cir. 1988) (*citing Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (1977)). The Court may look beyond an expert's ultimate conclusion and analyze the adequacy of its foundation. *Id.* Whether an expert's opinion has a sufficient basis and whether an evidentiary burden has been met without such opinion are matters of law for the Court to decide. *Id.*

Upon review of the record, the Court finds that Dr. Palmer's ultimate conclusion as to the cause of Staci's birth defects lacks an adequate foundation. First, Dr. Palmer sets forth absolutely no facts or data to support a conclusion that ingestion of oral contraceptives may cause or contribute to birth defects of the type suffered by Staci. Nor has he cited any facts or data to support his conclusion that ingestion of oral contraceptives in fact caused "underlying defects" in Staci.

■ Second, Dr. Palmer cites no reliable evidence to support a finding that Bendectin is capable of causing, in whole or in part, defects of the central nervous system. Dr. Palmer points to the fact that Bendectin carries a warning cautioning a user against driving an automobile while under its influence. However, the mere fact that a drug carries a general warning is not probative of the drug's teratogenic effect. *In re Richardson–Merrell Inc. Bendectin Products Liability Litigation*, 624 F.Supp. 1212 (S.D.Ohio 1985), affirmed, 857 F.2d 289 (6th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

With regard to the Heinonen study, the portions of the study cited by defendant demonstrates that the study's authors themselves concluded that the results could not be interpreted without independent confirmatory evidence and could not be used to even "infer" that a particular drug causes a particular malformation. Dr. Palmer has not come forward with any such independent evidence sufficient to confirm the findings in the Heinonen study. Thus, Dr. Palmer cannot reasonably rely on the 720% figure cited in the study to support his conclusion that Bendectin may cause or contribute to defects of the central nervous system.

Finally, Dr. Palmer has not presented sufficient and reliable evidence to support his conclusion that Bendectin contributed in any manner to Staci's birth defects. Dr. Palmer has not identified any studies that would permit a reasonable jury to conclude that Bendectin, although ingested outside the critical period of development for a particular anatomical structure, may contribute to defects of that structure if taken in conjunction with another drug. Dr. Palmer states generally that he bases his opinion, in part, on in vivo and in vitro animal studies. However, such studies are insufficient to prove causation in human beings in the absence of confirmatory epidemiological data. *Lynch v. Merrell—National Laboratories*, 830 F.2d 1190, 1195 (1st Cir.1987). Dr. Palmer has not set forth any such data.

In short, Dr. Palmer has failed to cite facts or data of a type reasonably relied upon by experts in his field in support of his opinion that Bendectin was a proximate cause of Staci's birth defects. In view of plaintiffs' failure to produce any additional evidence to support such a claim, summary judgment is warranted.

## CONCLUSIONS OF LAW

(1) The facts and data relied upon by Dr. Palmer in support of his opinion that Bendectin was a proximate cause of Staci Cadarian's birth defects are not of the type reasonably relied upon by experts in his field and provide an inadequate basis for his opinion.

(2) Dr. Palmer's affidavit does not satisfy the requirements of Fed.R.Evid. 703.

(3) Plaintiffs have failed to set forth specific facts showing that there is a genuine issue for trial concerning whether Bendectin was a proximate cause of Staci Cadarian's birth defects.

It is hereby ORDERED that defendant Merrell Dow Pharmaceuticals Inc.'s motion for summary judgment is GRANTED.

IT IS SO ORDERED.